Fehr Kremer v. Commissioner. Fehr Kremer and Nan D. Kremer v. Commissioner.
Kremer v. Commissioner
Docket Nos. 74795, 74796.
United States Tax Court
T.C. Memo 1961-337; 1961 Tax Ct. Memo LEXIS 12; 20 T.C.M. (CCH) 1756; T.C.M. (RIA) 61337; December 18, 1961
*12 Petitioner, the chief executive officer of a Louisville brewing company, withdrew amounts from petty cash and caused the brewing company to pay expenditures he incurred in and about Louisville. Held, respondent has failed to prove petitioner is liable for additions to tax for fraud in the years 1948 through 1954. Held, further, consideration of deficiencies for 1951 is barred by the statute of limitations. Held, further, correctness of deficiencies for the years 1953 and 1954, determined. Fehr Kremer, pro se, 750 S. Second St., Louisville, Ky. Arthur N. Mindling, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: The respondent determined deficiencies and additions to petitioners' income tax for the years 1948 through 1954 as follows: Additions to tax,
I.R.C. of 1939
Docket No.
Year
Deficiency
Sec. 293(b)
Sec. 294(d)(2)
74795
1948
$13,865.35
$6,932.68
$ 808.73
74796
1949
10,148.66
5,074.33
641.36
1950
13,304.12
6,973.58
1,107.46
1951
11,821.14
5,910.57
693.18
1952
7,103.60
3,551.80
573.23
1953
4,051.10
2,025.55
208.96
1954
924.56
462.28
73.00
*13 The issues are (1) whether certain withdrawals from or expenditures by a corporation in the years 1948 through 1954 were income to the petitioner which he failed to report in those years; (2) whether a part of the deficiency in each of the years 1948 through 1954 is due to fraud with intent to evade tax; (3) whether any of the years 1948 through 1952 is barred by the statute of limitations; and (4) whether petitioner is liable for additions to tax under section 294 (d)(2) [1] in each of the years 1948 through 1954. Findings of Fact Petitioners Fehr and Nan D. Kremer, husband and wife, reside in Louisville, Kentucky. They filed timely joint income tax returns for the year 1951 with the then collector and for the years 1953 and 1954 with the district director of internal revenue at Louisville. Fehr Kremer will hereafter be referred to as petitioner. Frank Fehr Brewing Co. is a corporation with its principal offices in Louisville. It was organized in about 1933 as a successor to a successful brewery organized by petitioner's grandfather in about 1872. It was essentially a family firm. Petitioner *14 was a major shareholder in the corporation and its chief executive officer from about 1933 until sometime in 1953. In addition to the stock he owned personally he was in a position to control, through a trust, the voting rights of a majority of Brewing Company's common stock. Frank Fehr, petitioner's uncle, was its president and also owned a large amount of its outstanding common stock. Brewing Company's sales reached their highest point in 1949 when total net sales were in excess of $9,000,000 and operating profit before taxes was about $1,200,000. Thereafter its earnings fell off rather sharply until in 1953 there was a net operating loss in excess of $200,000. Dissension developed between petitioner and his uncle which resulted in mid-1953 in petitioner's position as Executive Vice-President being taken over by another person. In early 1954 petitioner was separated from the Brewing Company for several months, but later in the year again acquired a voice in its affairs. For a number of years, at least as early as 1948 and running through some part of 1953, petitioner and his uncle withdrew or caused to be withdrawn, amounts of money from Brewing Company without accounting for *15 them in any accepted accounting fashion. Petitioner used the amounts so withdrawn for a variety of purposes including travel expenses, to pay for meals and for spending in bars which sold Brewing Company beer. Some of the amounts so withdrawn were expended for purposes purely personal in nature. Petitioner reported none of the amounts withdrawn as income on his tax return. Respondent in the statutory notice determined that petitioner's income was understated in each of the years in question by reason of his failure to report as income the corporate distributions to or for him in the respective amounts of $15,230.55, $19,482.11, $21,327.72, $17,684.71, $9,787.39, $7,658.00 and $2,259.85. Some part of most all of the separate distributions was reimbursement of or payment for travel, entertainment, or other expenses in the nature of ordinary and necessary expenses incurred in connection with the conduct of the corporation's business. With respect to the years 1951, 1953 and 1954, the amounts as originally determined by the respondent and as conceded by him, in part, at the trial consisted of the following items: Expenditure
1951
1953
1954
Columbia Club (Indianapolis, Ind.)
$ 234.94
$ 85.00
$ 10.00
Brown Hotel
82.52
261.22
Big Spring Golf Club
382.20 **
311.00
Standard Auto
171.00 ***
Audubon Country Club
947.07
800.73
Churchill Downs
250.00 *
250.00 *
250.00 *
Frankfort Country Club
22.50 *
90.00 *
22.50 *
Lemon & Sons
66.50
Drake Hotel (Chicago)
1,701.34
460.82
Edith Armes
52.00
Keeneland
75.00 *
75.00 *
Cave Hill Cemetery
129.50
Elks
12.00
24.00
Imperial House (Chicago)
227.25
Hurry-Up Broadway
455.45
Kenilworth Hotel (Miami, Fla.)
1,533.52
Fehr Kremer (checks)
2,725.00
400.00
Davis Cup Box
93.06 *
VonLengerke & Antoine (Chicago)
141.60
Petty Cash withdrawals
5,125.51
1,055.00
Valet and chauffeur
1,857.38
Personal automobiles
Ford Station Wagon
779.65 *
Ford Station Wagon
484.29
Ford Station Wagon
635.08
635.08
Cadillac
1,174.04 *
Cadillac
1,171.27
1,171.27
1,171.27
*16 The petitioners' Federal income tax return for 1951 was filed on or about March 17, 1952. On or before January 15, 1957, and at a time when the five-year period of limitations applicable to the year 1951 (under the conditions specified in section 275 (c) of the 1939 Code) still had approximately two full months to run, the parties hereto entered into a valid extension agreement or waiver with respect to such five-year period. Under the terms of this waiver (executed on Treasury Department Form 872) said five-year period of limitations was duly extended until June 30, 1958. The notice of deficiency for the year 1951 was dated April 9, 1958. The Brewing Company conducted an extensive local advertising campaign for its product. Its advertising expenditures were about $400,000 or $500,000 per year. [2] The advertising was handled by agencies in Chicago. Petitioner was the Brewing Company's advertising manager, in addition to his other duties. As *17 such he made several trips to Chicago in 1951, as he had for a number of years, to confer with the agency representative about the company's advertising campaign. Petitioner's wife accompanied him on these trips and took an active part in some of the discussions. Some of the meetings with agency personnel took place in restaurants. While in Chicago petitioner's wife also shopped and did things unconnected with the advertising discussions. In Chicago petitioner and his wife stayed at the Drake Hotel. In 1951 charges for petitioner's stays at the Drake Hotel amounted to at least $1,701.34. In addition, he and his wife incurred charges at Imperial House, a Chicago restaurant, of $227.25. In 1951 the Drake Hotel bills were addressed to petitioner in care of the Brewing Company in Louisville. They were paid in full by five Brewing Company checks drawn payable to the Drake Hotel and charged against the Brewing Company general expense account. The 1951 charges for the Imperial House were *18 addressed to petitioner's Louisville home address. They were paid by Brewing Company checks drawn payable to the Imperial House and charged against the Brewing Company general expense account. At least 50 percent of the Drake Hotel charges were ordinary and necessary business expenses of the corporation and were not includible in petitioner's gross income for 1951. Petitioner did not omit from his 1951 gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return. The consent fixing the period of limitation upon assessment of income tax was not filed within three years after his 1951 return was filed. The year 1951 is barred from consideration in this proceeding by the statute of limitations. Columbia Club, Indianapolis, Indiana: The Brewing Company had a distributor in Indianapolis. In years prior to 1953 and 1954 petitioner had used the facilities of the Club for entertaining and had stopped there on the way to and from Chicago. The Brewing Company had paid dues and charges for petitioner there. In 1953,$85, and in 1954, $10 were paid by Brewing Company check to the Club for petitioner's dues. Brown *19 Hotel, Big Spring Golf Club, Audubon Country Club: These three were located in and around Louisville. Petitioner frequented hotels, bars and other places where Brewing Company beer was sold. He often bought meals for others and provided rounds of drinks for persons who happened to be in the bars. The Brewing Company also provided funds for six or eight of its salesmen and other executives for the same purpose. Some salesmen made calls on bars at night when there would be more people in them for whom to buy drinks. Sometimes petitioner's wife accompanied him and he paid for meals for both. The amounts expended by petitioner in these places were in part expended for the entertainment of Brewing Company customers for bar bills and food. Brewing Company beer was the leading beer sold at the Brown Hotel. The account there was kept in petitioner's name. The Brewing Company did not have an account there in its name because petitioner, its chief executive officer, did not believe in open accounts in the company name. Brown Hotel charges totaling $261.22 were paid by Brewing Company check in 1953, and charged to general expense. The charges which these bills represented were incurred in the *20 Hotel restaurant and grill and included small amounts for tips. Restaurant charges ranged from about $3 to about $49 for any one billing and grill charges from about $2 to about $13. The Brewing Company had a policy of paying bills and dues for several company employees, including petitioner, at the Big Spring Golf Club and at the Audubon Country Club. Big Spring charges of $311 and Audubon charges of $800.73 were paid by the Brewing Company in 1953. Big Spring billing was for dues ( $24 per month), sundries, caddies' Christmas parties and quarterly locker charges. The bills show no charges for green fees, swimming pool or laundry. Audubon billing was for dues ( $20 per month), for sundries and for the Club Christmas fund. These charges were paid by the Brewing Company and charged to general expense. Of the total of the above charges, a portion represented expenditures for the benefit of petitioner which were purely personal in nature. Some part of said amounts represented ordinary and necessary business expenses of the Brewing Company and were not income of petitioner. Such amounts were: Brown Hotel, $52.24; Big Spring Golf Club, $62.20 and Audubon Country Club, $160.15. (20 percent *21 of amounts in question.) Edith Armes: Edith Armes sold Christmas cards. Petitioner purchased some from her in 1953. The Brewing Company paid $52 for them. Cave Hill Cemetery: The Brewing Company paid $129.50 for the upkeep of a cemetery plot in 1953. Fehr Kremer, checks: In 1953 a check in the amount of $400 was issued to petitioner by the Brewing Company when he went on a hunting trip as the guest of a malting company. Petitioner spent about $100 on the hunting trip. The unspent portion of the fund was retained by petitioner and expended for other purposes. Petty cash withdrawals: During 1953, as during prior years, petitioner caused amounts to be withdrawn from the Brewing Company petty cash account. For many years it had been the policy of the Brewing Company not to require an itemized accounting for petty cash withdrawals by any of its employees. Although the amounts of these withdrawals were recorded on petty cash tickets or vouchers, no detailed information with respect to the purpose of the withdrawal was entered on the vouchers. Most of the vouchers were simply marked "expense". One voucher, dated July 8, 1953, bears the following legend: "travel expense To Lexington *22 Ky (death Mrs. Carl Webb Distributor) $100.00." Petitioner's petty cash withdrawals were used for many purposes: church groups solicited money for bazaars; other Louisville charities were given donations from this fund; Christmas gratuities were given from it; customers were entertained at dinner; sums were spent in standing rounds of drinks in bars and other places which handled the Brewing Company product; and sums were spent for petitioner's personal purposes. Of the $1,055 withdrawn by petitioner from the Brewing Company petty cash account in 1953, $200 was spent for bona fide ordinary and necessary business purposes. The remaining amount was expended by petitioner for his personal benefit. Personal Automobiles: The Brewing Company owned several automobiles. One, a Cadillac, was at petitioner's personal disposal and driven by him. It was kept at petitioner's home and used by him both for his personal purposes and for traveling, primarily in and around Louisville, on Brewing Company business. The Brewing Company claimed depreciation on its corporate tax returns on the Cadillac of $1,171.27 in 1953 and 1954. Petitioner used this automobile 50 percent of the time for personal purposes. *23 The Brewing Company also owned a Ford station wagon for office use. It was often used by petitioner. It was maintained and driven by a handyman and used in Brewing Company business on occasions. The station wagon was used 25 percent of the time for petitioner's personal purposes. The Brewing Company claimed depreciation of $635.08 for this automobile on its income tax returns for both 1953 and 1954. The driver-handyman also did a number of things around the offices of the Brewing Company. He drove members of the office staff out for lunch, made trips to the bank and post office, shined shoes, drove members of the office staff home after work and did other chores. His combined overtime and wage payments covering the five-month period ended June 7, 1953 amounted to $1,857.38. A part of his time was spent doing things for petitioner not related to Brewing Company business. Petitioner realized income of $200 in 1953 for the time the handyman devoted to petitioner's personal projects for which he was paid by the Brewing Company. No part of any deficiency for the years 1948 through 1954 is due to fraud with intent to evade tax. None of the returns filed by the petitioner for the *24 years 1948, 1949, 1950 and 1952 was false or fraudulent with intent to evade tax. Opinion The first issue is whether any part of the deficiencies for the years 1948 through 1954 is due to fraud with intent to evade tax. Respondent has the burden of proving fraud by clear and convincing evidence. Arlette Coat Co., 14 T.C. 751. Petitioner was the major stockholder and chief executive officer of the Frank Fehr Brewing Company during most of the time here involved. There was evidence from which it can be concluded that a substantial sum of the amounts paid to or for petitioner by the brewery should have been included in his income in each of the years in question. However, we are convinced that the petitioner believed the expenditures by the brewery to or for him were legitimate company expenses for the purpose of furthering the interests of the Brewing Company by creating good will and by developing a body of satisfied customers who operated the clubs, bars and other such places where much of petitioner's spending was done. It also appears that the amounts of Brewing Company funds paid to or for petitioner were not in any way concealed. On the contrary, the board of *25 directors knew of and approved the expenditures. Fraud in the income tax sense may be shown by evidence of intentional or deliberate misrepresentation or failure to return income or by evidence of a reckless disregard in reporting which may lead a court to infer that the failure to disclose or report was intentional. Lacking persuasive proof in either of these respects, we conclude respondent failed to show by clear and convincing evidence that petitioner knew or should have known the questioned expenditures were not legitimate expenses of the corporation and that he deliberately failed to report them on his tax returns for the purpose of defrauding the Government in any of the years in question. Without a finding of fraud the years 1948, 1949, 1950 and 1952 are barred from further consideration by the statute of limitations. The next question is whether the year 1951 is barred by the statute of limitations. Respondent admits that it is barred unless the requirements of section 275(c) are met. Petitioner's 1951 income tax return as filed reported gross income for that year of $60,014.75. Section 275(c) provides that the period of limitation is extended to five years if "the taxpayer *26 omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return * * *." Respondent determined in the statutory notice that petitioner had as "Additional income", "Other income" of $17,684.71. At trial, respondent conceded certain items in whole or in part because, as the agent testified, they proved to be "duplications" or "expenses of others." These concessions reduced the additions to petitioner's 1951 income to $15,195.61, which is $191.92 more than 25 percent of $60,014.75. Respondent has the burden of proving the five-year statute applies. Elvina Ratto, 20 T.C. 785; C. A. Reis, 1 T.C. 9. This means he had the burden of proving petitioner, in the words of section 275(c), omitted "from gross income an amount properly includible therein which is in excess of 25 per centum of the amount stated in the [1951] return * * *." As related to this case the amount properly includible would be the portions of the brewery's payments to or for petitioner in excess of ordinary and necessary expenses incurred in connection with the conduct of the corporation's business. Abbott L. Johnson, 32 T.C. 257. *27 An analysis of the Drake Hotel expenditures will suffice to show respondent failed to prove petitioner omitted the requisite 25 per cent. Respondent's computation includes $1,701.34 which the Brewing Company paid directly to the Drake Hotel. A substantial portion of this expenditure was ordinary and necessary expenses of the corporation for petitioner's trips to Chicago in connection with the Brewing Company's advertising. [3] We have found that half of the sums so expended were for legitimate business activity. This adjustment alone reduces the alleged omissions of petitioner's income to less than 25 percent of his reported income and is sufficient to demonstrate the respondent's failure of proof to extend the limitation period under section 275(c). We hold the year 1951 barred by the statute of limitations. *28 The years 1953 and 1954 remain for consideration. Respondent determined the deficiencies in these years by adding to petitioner's income amounts paid by the Brewing Company for expenses incurred by petitioner, and amounts withdrawn by petitioner from the corporate petty cash account. Petitioner tried his own case. While most of the evidence in his favor is his own testimony, such testimony stands uncontradicted in any important respect, and, indeed, in some instances is bolstered by the testimony of respondent's witnesses. Although the record is deficient in specific instances as to some of the items of deficiency, we believe petitioner has carried his burden of proof sufficiently to bring the rule of Cohan v. Commissioner, 39 F. 2d 540, into operation. [4] As our findings of fact demonstrate, where we have used the Cohan rule we have weighed heavily against petitioner for deficiencies in the evidence. *29 In general, petitioner's testimony was that the Brewing Company was a family corporation the product of which served essentially a local market. It employed about six or eight salesmen in Louisville and two or three outside Louisville. Under Kentucky law, local jurisdictions may choose whether or not spiritous, vinous or maltous beverages may be sold therein. [5] Petitioner felt that it was good policy for executives of a brewery to have broad acquaintance with prominent members of the social, business and political communities of the locality. He testified that it was Brewing Company policy to enable its executives to belong to local clubs and to enable its executives and salesmen to spend money in bars, taverns and other retail outlets for petitioner's product by setting up drinks in order to promote good will among both the customers and the owners of the establishment. Petitioner stated that he did this and at times his wife accompanied him to help entertain customers. *30 Columbia Club: Although petitioner testified that the Columbia Club in Indianapolis was used by him to entertain the Brewing Company distributor and customers in that city, the amounts for 1953 and 1954 seem to represent only dues. Petitioner has offered no evidence that the Columbia Club was actually used by him in these years to further the interests of the Brewing Company or in his business as a corporate executive. Accordingly, we sustain respondent's deficiency as to this item for failure of petitioner's burden of proof. Brown Hotel, Big Spring Golf Club, Audubon Country Club: Petitioner testified that amounts spent at the Brown Hotel and the Big Spring and Audubon Clubs and paid for by Brewing Company checks were to entertain customers and in general to further Brewing Company's interests. We are convinced that some, but not all of the amounts expended at these places, were for the purposes outlined by petitioner. Accordingly, under the Cohan rule, and bearing heavily against petitioner for his lack of specificity, we have found the amounts set forth in our findings of fact were expended for the benefit of the corporation and are not includible in petitioner's income. *31 Edith Armes: Petitioner testified that Edith Armes furnished Christmas cards which were used by petitioner to send to business acquaintances. He stated that his business Christmas cards were inscribed "Mr. and Mrs. Fehr Kremer" and that his personal cards, not paid for by the Brewing Company, were inscribed "Nan and Fehr Kremer." As evidence of this, petitioner relied on an invoice from Edith Armes. The invoice, however, is dated 1952 and is in the amount of $51.12. Respondent's deficiency of $52 is for 1953. We conclude that petitioner has failed to prove that respondent's addition to his 1953 income of this amount was incorrect. Cave Hill Cemetery: Although petitioner stated on brief that this amount was paid for the upkeep of the Fehr family cemetery plot (and he thought it was deducted from his salary), no evidence was presented at trial as to this item. We therefore hold respondent correctly included it in petitioner's income. Petitioner caused the Brewing Company to draw a check for $400 payable to him in 1953. He testified that he spent about $100 of it on a hunting trip sponsored by a supplier and that the rest of it he used in the same way as he used petty cash withdrawals. *32 Petitioner has failed to prove that any part of the $400 was spent for other than personal purposes. We sustain respondent's addition of this amount to petitioner's 1953 income. Petitioner withdrew or caused to be withdrawn $1,055 from the Brewing Company petty cash fund. Although the amounts of these withdrawals were recorded on petty cash tickets or vouchers, no detailed information with respect to the purpose of the withdrawal was entered on the vouchers. Petitioner testified that the amounts of petty cash were used for the furtherance of Brewing Company interests and gave as examples contributions to charities which he did not wish company employees to know about; [6] Christmas gratuities, contributions to church bazaars [7] and others. Here, again, on the basis of petitioner's testimony we are convinced that some amount was expended for the ordinary and necessary benefit of the Brewing Company, and have set out that amount in our findings of fact. *33 Several Brewing Company automobiles were at petitioner's disposal during portions of 1953 and 1954. Respondent, in the statutory notice, added to petitioner's income an amount equivalent to the deduction taken by the corporation on its income tax returns for depreciation on these automobiles in 1953 and 1954. Apart from these amounts, no claim is made by respondent for any further addition to income for amounts expended for repairs and operating expenses. Petitioner's evidence shows that both the Cadillac and the station wagon were used to some extent for purposes connected with the business of the Brewing Company, or with his business as an executive of the Brewing Company. Depreciation was used by respondent as the measure of additional income to petitioner on the theory that both automobiles were used entirely for petitioner's personal purposes. See Rodgers Dairy Co., 14 T.C. 66. We have found as a fact that the Cadillac was used by petitioner for personal purposes 50 percent of the time and that the station wagon was used for personal purposes 25 percent of the time. Therefore, for the year 1953 the additions to petitioner's income will be decreased accordingly. *34 Petitioner, in 1954, because of the dispute over control of the Brewing Company, was not employed by the company from sometime in January 1954 until about the middle of 1954. During about six months of 1954 he did not have the use of a company car and the station wagon was not available to him. Respondent's additions to his income were based on the fact that he had control of the corporation as its employee. We believe that the additions to income for the use of Brewing Company automobiles must be further reduced by one-half after the adjustments outlined for 1953 are made, in 1954. A handyman was employed and paid by the Brewing Company. He drove petitioner and members of the office staff and did errands. Respondent added to petitioner's income the wages of this person for a five-month period in 1953. While the record shows that the handyman performed some services for petitioner on time paid for by the Brewing Company, petitioner has shown that his full time was not devoted to petitioner's personal business. Too, because petitioner visited bars, hotels and so on in the evenings does not necessarily mean the overtime pay was for his personal benefit. We believe that respondent's *35 measure of the value of the handyman's services is overlarge and have found as a fact that a lesser portion was income to petitioner. Standard Auto: Petitioner presented no evidence concerning this item other than to say it was for "the company automobile." Accordingly, we hold respondent correctly determined it should be added to petitioner's income. Respondent determined petitioner liable for additions to tax under section 294(d)(2). Such additions are approved to the extent the requirements of that section are met after the adjustments in this opinion are taken into account. Decisions will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1939, as amended.↩
**. Respondent conceded that this amount should be decreased by $94.85. (Bal. $287.35). ↩
***. Respondent conceded that this amount should be decreased by $22.75.↩
*. At trial respondent conceded these items are not income to petitioner. ↩
2. There is no direct evidence of this figure. However, the Brewing Company's purchasing agent testified that the 15 percent advertising commission paid "would be from fifty to $75,000 a year."↩
3. Respondent on brief admits that some of petitioner's activities in Chicago were connected with the Brewing Company. His brief states: The present record does not establish that petitioner carried on very much, if anything, more than a nominal amount of activities directly affecting the business of the Brewing Company during * * * trips to Indianapolis and Chicago during the year 1951 * * *.↩
4. Respondent presages our use of the Cohan rule in this case and seems to admit its propriety when he states on brief: Respondent, therefore, respectfully submits that the present record affords no valid basis for allowing petitioners more than a purely nominal business expense deduction with respect to any of such expenditures. * * *↩
5. The Constitution of Kentucky (1956) provides, in part: § 61. Provision to be made for local option on sale of liquor; time of elections. The General Assembly shall, by general law, provide a means whereby the sense of the people of any county, city, town, district or precinct may be taken, as to whether or not spirituous, vinous or malt liquors shall be sold, bartered or loaned therein, or the sale thereby regulated. * * * Chapter 242, Kentucky Revised Statutes↩, carries the constitutional mandate into effect.
6. One of respondent's witnesses testified that petitioner withdrew "as high as $600" in "new money" in some years for this purpose. ↩
7. Petitioner testified: "there wasn't a church bazaar * * * held * * * without a great big beer stand."↩